# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **LINDA TAYLOR TUCKER,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: **4:19-CV-00759-RDP** |
| **ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY,** | } |
| **Defendant.** | } |

## <u>MEMORANDUM OF DECISION</u>

Plaintiff Linda Taylor Tucker brings this action under 42 U.S.C. § 405(g) of the Social Security Act ("Act"), seeking review of decision made by the Commissioner of the Social Security Administration ("Commissioner") denying her claims for disability insurance benefits ("DIB"). Based on the court's review of the record and the briefs submitted by both parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**I.    Proceedings Below**

This action originates from Plaintiff's application for Title II Social Security DIB filed August 3, 2017. (Tr. 148). Plaintiff alleged disability beginning on March 10, 2014, due to the following conditions: depression, anxiety, panic attacks, migraines, nerve damage, neck and back pain and problems, and degenerative disc disease. (Tr. 148, 151, 166, 168). On September 21, 2017, the Commissioner determined that Plaintiff was not disabled and denied her application. (Tr. 59–75). On November 14, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") regarding the initial disability determination and denial of DIB. (Tr. 83–84). On October 25, 2018, the ALJ, along with vocational expert Dr. David Head, held an oral hearing

from her office in Birmingham, Alabama, with Plaintiff and her counsel appearing via video teleconference from Gadsden, Alabama. (Tr. 38–59, 114).

In her decision dated November 27, 2018, the ALJ determined that Plaintiff had the residual functional capacity to perform light work, with some exceptions, as defined in 20 C.F.R. § 404.1567(b), and that Plaintiff was not disabled as defined by the Act; therefore, the ALJ determined she was not entitled to DIB. (Tr. 24, 31). On April 2, 2019, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 1). The denial by the Appeals Council constitutes the final decision of the Commissioner which is now subject to this court's review pursuant to 42 U.S.C. § 405(g).

At the time of the ALJ hearing, Plaintiff was 40 years old, had completed two years of college, and had previously worked as a certified nurse assistant. (Tr. 42, 169). In her hearing testimony, Plaintiff stated that she was last employed full time in 2007. (Tr. 42). Plaintiff was previously employed as a temp at Snead State Community College in 2014. (Tr. 42, 217). On a typical day, Plaintiff says that she gets two of her children ready for school, drops them off and picks them up, and helps them with their homework. (Tr. 209). Plaintiff's youngest son has special needs, and she claims that he requires her individualized attention, which includes changing him, wiping him, feeding him, bathing him, and rocking him to sleep. (Tr. 209). Plaintiff also asserts that she cares for a pet, does laundry, picks up after her children, and does the dishes; however, she takes breaks in between each activity because completion of each task varies in length. (Tr. 209, 211). Plaintiff initially maintained that she typically "cooks" supper. (Tr. 211). But, she later backtracked, saying that her husband does the actual cooking and that she only makes frozen pizza or sandwiches. (*Id.*). Plaintiff also claims that she cannot stand up or do anything on some days and instead has to remain in bed or sit in a recliner. (Tr. 209, 212). On those days, Plaintiff

says that her husband stays home from work or her mother comes over to help around the house. (Tr. 210, 216). Plaintiff asserts that she gets along well with authority figures and has never been fired for failing to get along with others. (Tr. 215). However, Plaintiff states that she does not like to see others anymore, including her friends, and it appears that her social interactions are limited to Facebook and visiting with her mother in person or over the phone. (Tr. 213–14, 233). Plaintiff also claims that she sometimes gets in disagreements with her husband because he cannot understand how she's feeling and has never experienced her symptomology. (Tr. 214).

Plaintiff alleges a history of severe neck pain and migraines. On May 15, 2013, Plaintiff was involved in a car accident and admitted to the emergency department at Gadsden Regional Medical Center, where she was diagnosed with acute cervical strain and acute dorsal strain. (Tr. 389, 598). Plaintiff visited the emergency department at Gadsden Regional two more times in 2013, and on each occasion the attending physicians diagnosed her with an acute severe migraine headache. (Tr. 588, 591–92). In September of 2014, following a cervical spine MRI, Plaintiff was diagnosed with degenerative disk disease, including a posterior bulge. (Tr. 565, 572, 574). On December 23, 2014, Plaintiff was admitted to Grandview Medical Center in Birmingham, citing severe neck pain and headaches that began with the birth of her last child earlier in the year. (Tr. 321). Plaintiff opted to have microscopic anterior cervical discectomy and fusion of her C5–C6 vertebra, which was successfully performed by Dr. Stanford Faulkner on December 29, 2014. (Tr. 304–07, 322–24).

At the ALJ hearing, Plaintiff claimed that the surgery exacerbated her neck and back pains, as well as increased the frequency and severity of her migraines. (Tr. 45). However, X-rays and MRIs during the first half of 2015 proved unremarkable, showing only that Plaintiff's surgery had been successful and that there was no significant nerve root compression to explain her recurrent

3

symptomology, despite some mild left neural foraminal narrowing at her C6–C7 vertebra.  (Tr. 273, 298, 302–03).  Plaintiff sought treatment for her pain, first at the Pain and Wound Care Center in Gadsden from October 13, 2015 to July 11, 2016, and then at Cherokee Pain Management, LLC, in Centre from August 8, 2016, through at least August 6, 2018.  (Tr. 364–411, 465, 611).   During her course of treatment at Cherokee Pain Management, Plaintiff received trigger point injections on December 19, 2016, February 27, 2017, and February 12, 2018.  (Tr. 493, 513, 857).  These injections do not appear to have been a sufficient, long-term solution for Plaintiff's pain because after an unremarkable thoracic spine MRI on February 2, 2017, Cherokee Pain Management directed her to use a TENs unit at home.  (Tr. 531, 551).  At the ALJ hearing, Plaintiff testified that she continues to use the TENs unit five days a week.  (Tr. 45).   However, Plaintiff's last thoracic spine MRI on July 29, 2017 still showed nothing remarkable.  (Tr. 45, 549).

 Plaintiff also claims that she suffers from mental disorders.  On March 3, 2014, Plaintiff began treatment for panic attacks and anxiety with Dr. Oluwole Akisana at First Care Medical Clinic in Gadsden.  (Tr. 41, 449).  Plaintiff's anxiety treatment regimen began with only 0.5 mg of Xanax daily, but by December 1, 2016, she was taking 20 mg of Lexapro each day.  (Tr. 444, 439).  On December 1, 2016, Dr. Akisana diagnosed Plaintiff with "[m]ajor depressive disorder, single episode, mild," and increased her Wellbutrin prescription to 300 mg daily.  (Tr. 438–39). Following the birth of her son with special needs in 2014, Plaintiff appeared to suffer from postpartum depression, which may have amplified her perceived symptoms of pain.  (Tr. 725–28, 731–33, 971–78).  On December 13, 2017, Dr. June Nichols of Gadsden Psychological Services, LLC, provided a comprehensive psychological evaluation specifically for Plaintiff's DIB application.  (Tr. 978).  Following a single, initial evaluation of Plaintiff, Dr. Nichols deemed her

4

symptomology severe enough for a diagnosis of "Major Depressive Disorder, recurrent, Severe." (Tr. 981).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity" is work activity that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

Even if the claimant cannot be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(g)(1). In this

final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability, and that she suffers from the following severe impairments that significantly limit her ability to perform basic work activities: degenerative disc disease, headaches, obstructive sleep apnea, hypertension, obesity, and depression with anxiety. (Tr. 21). However, the ALJ concluded that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 22). Finally, after consideration of the entire record, the ALJ determined that Plaintiff retains the residual functional capacity to engage in light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations: she can occasionally crawl and climb ramps and stairs; can frequently balance and stoop; is precluded from reaching overhead, bilaterally, and should avoid concentrated exposure to extreme temperatures, humidity, and vibration; is precluded from all exposure to hazards; and can understand, remember, and apply simple instructions. (Tr. 24). Following the testimony of the vocational expert, the ALJ determined that Plaintiff was precluded from performing her past relevant work as a certified nurse assistant. (Tr. 29). However, the ALJ further concluded that Plaintiff was not disabled as defined by the Act because Plaintiff's age, education, work experience, and RFC would have allowed her to perform jobs that existed in significant numbers in the national economy at the date last insured. (Tr. 30). The ALJ also concluded that Plaintiff was not entitled to a period of disability insurance benefits at any time between March 10 and

September 30, 2014, Plaintiff's alleged onset date of disability, and her date last insured, respectively. (Tr. 31).

## III.  Plaintiff's Argument for Reversal

Plaintiff advances four arguments in favor of reversing the ALJ's decision. First, she claims that the ALJ improperly applied the Eleventh Circuit's pain standard by relying exclusively on objective evidence contained in the record. Second, Plaintiff argues that the ALJ neglected her duty to properly determine her onset date of disability according to Social Security Ruling 83-20. Third, Plaintiff asserts that the ALJ failed to accord proper weight to the examining psychologist, Dr. June Nichols, and instead substituted her own opinion for that of a treating physician. Finally, Plaintiff contends that the ALJ's decision to deny a period of DIB was not based on substantial evidence because that determination was based on vocational expert testimony that could not constitute substantial evidence.

## IV.  Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)). Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id.* at 1158–59. *See also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th

Cir. 1990). However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## V.     Discussion

### A.     The ALJ Properly Applied the Eleventh Circuit Standard for Evaluating Disability Due to Pain

Plaintiff contends that the ALJ's step four RFC determination is not supported by substantial evidence because the ALJ used the wrong standard for evaluating her neck pain, headaches, and depression. Specifically, Plaintiff asserts that the ALJ relied exclusively on the objective evidence alone contained in her treatment records. However, this argument fails because the record makes clear that the ALJ determined that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms was not consistent with the evidence contained in the record as a whole. (Tr. 25).

The Eleventh Circuit has articulated a pain standard that applies when a claimant seeks to establish disability through her own testimony about pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1995). Under that standard, a claimant must show: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* Plaintiff claims that she satisfied the requisite prongs of the Eleventh Circuit pain standard because the ALJ found that she suffered from "[o]bjective causes of pain and weakness including degenerative disc disease, disc bulge, headaches, obstructive sleep apnea, and hypertension." (Tr. 21). However, the problem with Plaintiff's argument is that she improperly

8

points to the ALJ's findings from step two of the disability determination, rather than the pain analysis the ALJ undertook during the RFC determination at step four.

The ALJ's step two determination is a threshold inquiry "that allows only claims based on the most trivial impairments to be rejected." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). At step two of the disability determination, a "[c]laimant need only show that her impairment is not [] slight and its effect not [] minimal." *Id*. By comparison, the relevant pain standard applies during the ALJ's step four determination of the RFC. 20 C.F.R. § 404.1529(c)–(d); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); *Wilson v. Barnhart*, 284 F.3d 1221, 1225–26 (11th Cir. 2002). The analyses of pain at step two and at step four should not be conflated because each is designed to address separate issues and each places different burdens of proof on the claimant. *See* 20 C.F.R. § 404.1529(b)–(c)(1).

In making the step four RFC determination, the ALJ may discredit a claimant's testimony regarding symptoms as long as she "clearly articulate[s] explicit and adequate reasons" for doing so. *Dyer v. Barnhart*, 395 F.3d at 1210. Any failure to adequately express the reasons for discrediting a claimant's subjective symptomology requires the testimony to be accepted as true as a matter of law. *Holt v. Sullivan*, 921 F.2d at 1223. In Plaintiff's case, the ALJ concluded that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause some of her alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." (Tr. 25). The ALJ discredited Plaintiff's pain testimony. The court's task now is to evaluate whether the ALJ's stated reasons for doing so are supported by substantial evidence. *Dyer*, 395 F.3d at 1210.

The ALJ opined that the "wealth of relatively normal examination findings, as well as [Plaintiff's] admitted and indicated activities and abilities, . . . are inconsistent with the level of symptomology [Plaintiff] alleges." (Tr. 26). Plaintiff's testimony at the ALJ hearing—which indicated that the pain from her headaches is so debilitating that she can only lay in a dark room and cool herself off, and that she must lay down for three to four hours on any given workday—contrasts sharply with her history of relatively normal examination findings in which (among other things) she reported no back pain or headaches. (Tr. 44, 49, 534–545, 725–66). Additionally, Plaintiff's statements regarding the intensity, persistence, and limiting effects of her pain conflicts with numerous X-ray and MRI results contained in the record. (Tr. 288, 294, 357). Finally, Plaintiff's assertions clash with her testimony that she is able to (1) take care of her sons, including getting them ready for school, helping them with homework, and caring for her youngest son who has special needs, and (2) prepare meals, do household chores, and shop. (Tr. 209–16, 225–36). The court concludes that the ALJ followed the correct legal standards and that her credibility determination regarding Plaintiff's pain testimony is supported by substantial evidence.

### B.     The ALJ Is Not Required to Determine the Date of Disability Under Social Security Ruling 83-20

Plaintiff next argues that the ALJ failed in her duty to properly determine her onset date of disability pursuant to Social Security Ruling 83-20. However, determining the onset date of disability is necessary only when the ALJ finds the claimant is disabled. If the ALJ finds that the claimant is not disabled (as is the case here), the ALJ need not determine the onset date of disability. *Klawinski v. Comm'r of Soc. Sec.*, 391 F.App'x 772, 775 (11th Cir. 2010). Therefore, the court concludes that the ALJ was not required to determine Plaintiff's onset date of disability.

### C. The ALJ Did Not Improperly Discount the Testimony of Plaintiff's Psychologist, Dr. June Nichols

Plaintiff's third argument is that the ALJ failed to accord proper weight to the testimony of her psychologist, Dr. June Nichols. Specifically, Plaintiff claims that the ALJ not only failed to state with "some measure of clarity" why Dr. Nichols' opinion was discredited, but also substituted her own opinion for that of Dr. Nichols'. This argument is unpersuasive for at least three reasons: (1) the RFC determination is the province of the ALJ alone; (2) the ALJ's reasons for discounting Dr. Nichols' opinion are supported by substantial evidence; and (3) under 20 C.F.R. § 1520c, the ALJ no longer is required to assign specific evidentiary weight to physician testimony.

It is emphatically the duty of the ALJ to make the RFC determination at step four of the disability analysis. 20 C.F.R. § 404.1546; *Moore v. Soc. Sec. Admin., Comm'r*, 649 F.App'x 941, 945 (11th Cir. 2016). This court has long recognized that the RFC determination is well within the scope of the ALJ's authority as it requires consideration of not only the relevant medical evidence but also the evidence contained in the record as a whole. *Smith v. Saul*, 413 F. Supp. 3d 1140, 1144 (N.D. Ala. 2019). Forcing the ALJ to accept the conclusions of a medical expert would essentially require the Commissioner to abdicate the statutory responsibility to decide whether the claimant is disabled and entitled to benefits. *See* SSR 96-5p, 1996 WL 374183 (July 2, 1996). Thus, the ALJ is not required to take the opinions and recommendations of medical experts at face value.

Plaintiff asserts that "[t]he ALJ cannot substitute [her] judgment for that of the medical and vocational experts." It is true that the ALJ may not substitute her own judgment for that of a medical expert or a vocational expert. *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982). However, the ALJ in this case simply did not do that. And, to be sure, Plaintiff has made no attempt to explain how the ALJ prioritized her own opinion over that of Dr. Nichols'. Instead,

11

Plaintiff merely posits that the ALJ failed to articulate reasons with "some measure of clarity" for discounting Dr. Nichols' testimony. The court disagrees.

At the time of her comprehensive evaluation, Dr. Nichols was Plaintiff's examining physician, not her treating physician. Under the previous standard, a treating physician's testimony must be given substantial or considerable weight unless the ALJ can show "good cause" for holding it in lesser regard. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. § 404.1527. Conversely, the opinion of a physician who examines the claimant on only one occasion is generally not entitled to great weight. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004). Thus, the ALJ could have discounted the opinion of Dr. Nichols due to the brevity of the relationship between Dr. Nichols and Plaintiff.

Additionally, even if Dr. Nichols could be considered as one of Plaintiff's treating physicians at the time of the comprehensive evaluation (and, to be clear, the court concludes the record evidence does not support such a finding), an ALJ is not required to give a treating physician's testimony substantial or considerable weight if: (1) it is not supported by other evidence in the record; (2) the evidentiary record supports a contrary finding; or (3) the treating physician's opinion is either conclusory or inconsistent with their own treatment records. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

In this case, the ALJ noted that Dr. Nichols' assertion that Plaintiff cannot sustain concentration with work-related activities is inconsistent with previous examination findings, including Plaintiff's demonstrated ability to count and spell backwards, as well as her ability to perform serial threes. (Tr. 28–29). Similarly, the ALJ determined that Dr. Nichols' opinion about Plaintiff's ability to engage in social interactions and deal with work-related pressures was inconsistent with the fact that Plaintiff lives with her family and relies on them to help with her

children, as well as with findings that Plaintiff has previously exhibited normal behavior, proper alertness and orientation, and fair eye contact. (Tr. 28–29). Thus, the ALJ's reasoning behind her decision to afford Dr. Nichols' opinion less weight during the RFC determination is supported by substantial evidence, even under the standard that existed before March 27, 2017.

However, there is a new standard. An ALJ presiding over a claim for Social Security DIB filed after March 27, 2017 need not assign evidentiary weight to the testimony of a claimant's healthcare providers. 20 C.F.R. § 404.1520c(a). *See also* 20 C.F.R. § 404.1520c(c)(3)–(4) (stating that the ALJ considers the length, purpose, and extent of the treatment relationship between the physician and patient; the frequency of examinations; and the physician's specialization, in determining how to evaluate any medical opinion). It is clear from the ALJ's analysis (discussed in the immediately preceding paragraph) that she properly evaluated the relevant factors necessary under 20 C.F.R. § 404.1520c. The court concludes that the ALJ's decision to afford Dr. Nichols' testimony less weight during the RFC determination is supported by substantial evidence.

### D.     The Testimony of the Vocational Expert Constitutes Substantial Evidence

Plaintiff's final argument is that the ALJ's denial of DIB was not supported by substantial evidence because the testimony of the vocational expert was based on an inaccurate and incomplete hypothetical. At the hearing on October 25, 2018, the ALJ's hypothetical to the vocational expert explicitly included the following limitations which she found to exist as part of the RFC determination:

> Dr. Head, if you would assume a person who is a younger individual with fourteen years education and the work experience the same as [Plaintiff] and she could perform work at a light level of exertion as that term is defined in the regulations except she could occasionally crawl or climb ramps and stairs, frequently balance or stoop, never reach overhead bilaterally. She should avoid concentrated exposure to extreme temperatures, humidity, vibration, and avoid any

>exposure to hazards. Could this hypothetical individual return to any of [Plaintiff's] past work?

The vocational expert answered that the individual could return to Plaintiff's past work as a general office clerk and as a pharmacy technician, but not as a certified nurse assistant. (Tr. 56). Using this testimony, the ALJ determined that Plaintiff could find jobs that existed in the national economy in significant numbers during the period between Plaintiff's alleged onset disability date and her date last insured. (Tr. 30). Plaintiff contends that the ALJ's hypothetical failed to consider her migraine headaches, her pain, her neck surgery on December 20, 2014, and her depression. However, upon careful review of the record, the court finds that the ALJ's hypothetical appropriately accounted for the full battery of Plaintiff's limitations and medically determinable impairments.

An ALJ may use the testimony of a vocational expert to determine whether a claimant, based on her RFC, age, education, and past work experience, can perform other work in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237–40 (11th Cir. 2004). During the claimant's hearing, the vocational expert testifies by responding to hypotheticals asked by the ALJ. *Id.* at 1240. The Eleventh Circuit has long held that these hypotheticals need only to account for the claimant's impairments, rather than for all of the claimant's expressed symptoms. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007). That is to say that the ALJ's hypothetical must either explicitly include the claimant's medically determinable impairments, or at the very least implicitly account for the limitations stemming from those impairments. *Winschel*, 631 F.3d at 1180–81.

The ALJ's hypothetical need not specifically reference all of Plaintiff's medically determinable impairments because it instead included the limitations derived from those impairments. *See Ybarra v. Comm'r of Soc. Sec.*, 658 F.App'x 538, 541–42 (11th Cir. 2017)

(determining that ALJ's hypothetical question to vocational expert was not improper because it took into account all limitations found in the RFC, which was itself supported by substantial evidence). Here, the ALJ did not err by failing to include Plaintiff's pain in the hypothetical posed to the vocational expert because she found (correctly) that Plaintiff's subjective complaints of disabling pain were not supported by substantial evidence in the record. *Crawford*, 363 F.3d at 1160–61. Therefore, the court concludes that the vocational expert's testimony was not based on an improper hypothetical, and that substantial evidence supports the ALJ's determination that Plaintiff was not disabled and not entitled to DIB under the Act.

## VI.    Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and that the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this June 26, 2020.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE